[No. H019287. Sixth Dist. Dec. 2, 1999.]

ROY DEWEY BARNHART III et al., Plaintiffs and Appellants, v. CABRILLO COMMUNITY COLLEGE et al., Defendants and Respondents.

820

**COUNSEL**

Gary Haraldsen for Plaintiffs and Appellants.

Burton, Volkmann & Schmal, Timothy R. Volkmann and Karen E. Lintott for Defendants and Respondents.

---

## OPINION

**PREMO, J.**—Plaintiffs Roy Dewey Barnhart III, Masao Drexel, and Robert Zamora sued defendants Cabrillo Community College and Jason Rene Larrieu for personal injuries suffered in an automobile accident. The accident occurred while Cabrillo's employee, Larrieu, was driving plaintiffs from the college to Fresno City College to play an intercollegiate soccer match. The trial court granted defendants' motion for summary judgment on the basis of immunity pursuant to title 5, California Code of Regulations, section 55450 (hereafter, title 5, section 55450). On appeal, plaintiffs contend that Education Code section 87706 (hereafter, section 87706) applies to this case and allows them to prove liability. We disagree and affirm the judgment.

### SCOPE OF REVIEW

The parties do not dispute the material facts. The issue is simply whether title 5, section 55450 immunity applies to this case. ■ "The meaning and effect of statutory provisions is a matter for our independent review." (*Service Employees Internat. Union* v. *Board of Trustees* (1996) 47 Cal.App.4th 1661, 1665 [55 Cal.Rptr.2d 484].)

■ "It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed." (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) Generally, a statute should be construed so as to harmonize, if possible, with other laws relating to the same subject. (*Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590-591 [116 Cal.Rptr. 376, 526 P.2d 528].) To harmonize two statutes relating to the same subject, a particular or specific statute will take precedence over a conflicting general statute. (Code Civ. Proc., § 1859.) And significance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

### UNDISPUTED MATERIAL FACTS

Plaintiffs were members of the men's soccer team; Larrieu was the assistant coach. An away game was scheduled in Fresno. Larrieu drove

plaintiffs and other players to the game in a van owned by Cabrillo. On southbound Highway 99, one of the tires blew out. Larrieu lost control of the van. The van traveled across two lanes of traffic, overturning several times.

## LEGAL BACKGROUND

Under the California Tort Claims Act, "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).)

Government Code section 815.2, subdivision (a), is one such statute. It provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . ."

■ "Through this section, the California Tort Claims Act expressly makes the doctrine of respondeat superior applicable to public employers. [Citation.] 'A public entity, as the employer, is generally liable for the torts of an employee committed within the scope of employment if the employee is liable. [Citations.]' [Citation.] Under [Government Code] section 820, subdivision (a), '[e]xcept as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person.' Thus, 'the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person [citation] and the public entity is vicariously liable for any injury which its employee causes [citation] to the same extent as a private employer [citation].' [Citation.]" (*Hoff* v. *Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522].)

Section 87706 states that "Notwithstanding any other provision of this code, no community college district, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any student of the public schools at any time when such student is not in school property, unless such district has undertaken to provide transportation for such student to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district shall be liable or responsible for the conduct or safety of any student only while such student is or should be under the immediate and direct supervision of an employee of such district or board."

On the other hand, title 5, section 55450, subdivision (a), provides that the governing board of a community college district may conduct "field trips or excursions in connection with courses of instruction or school-related social, educational, cultural, athletic, or college band activities to and from places . . . ." But subdivision (d), states, in pertinent part: "All persons making the field trip or excursion shall be deemed to have waived all claims against the district or the State of California for injury, accident, illness, or death occurring during or by reason of the field trip or excursion."

### DISCUSSION

A plain reading of section 87706 is that the section reaffirms the general statutory rule of vicarious liability for accidents occurring to students where the community college district provides transportation to and from the school premises for an off-premises school-sponsored activity (or otherwise affirmatively assumes responsibility for student safety) and the accident occurs while the student is or should be under the supervision of an employee.

A plain reading of title 5, section 55450 is that the section overrides the general statutory rule of vicarious liability and immunizes a community college district from liability for accidents occurring during field trips or excursions to participants thereof.

Plaintiffs' position is that section 87706 applies to this case so as to make operative against defendants the general statutory rule of vicarious liability. They point out that section 87706 contemplates transportation to a "school-sponsored activity." They urge that their trip to the soccer match fits within this definition. They conclude that section 87706 is a specific statute applicable to the circumstances. They further contend that title 5, section 55450 is a mere regulation that cannot alter or impair the scope of a statute. (*Bowman v. City of Petaluma* (1986) 185 Cal.App.3d 1065, 1081 [230 Cal.Rptr. 413].)

Defendants' position, on the other hand, is that title 5, section 55450 applies to this case so as to make them immune from liability. They point out that section 55450 contemplates "field trips or excursions" in connection with athletic activities. They urge that plaintiffs' trip to the soccer match fits within this definition. They conclude that section 55450 is a specific statute applicable to the circumstances. They bolster this point by claiming that plaintiffs' participation on the soccer team was voluntary in the sense that they were not required to travel to away games in college-provided transportation or even attend away games in the first instance.

Plaintiffs counter that, at the very least, there exists a triable issue of fact as to whether their participation on the soccer team was voluntary, pointing

to their declarations in which they stated that they believed attendance at away games was mandatory because their grades would otherwise suffer.

### 1. *Statute-Regulation Dichotomy*

Education Code section 70902 provides in pertinent part: "(a) Every community college district shall be under the control of a board of trustees, which is referred to herein as the 'governing board.' The governing board of each community college district shall establish, maintain, operate, and govern one or more community colleges in accordance with law. In so doing, the governing board may initiate and carry on any program, activity, or may otherwise act in any manner that is not in conflict with or inconsistent with, or preempted by, any law and that is not in conflict with the purposes for which community college districts are established. . . ."

Education Code "[s]ection 70902 was added to the code in 1988 but contained the same language as former section 72233, which had been added in 1976. Section 72233 was enacted in response to a 1972 amendment to the California Constitution, article IX, section 14, which added the following sentence to that section: 'The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established.'

"When the Education Code was amended in 1981, the Legislature stated that 'It is the intent of the Legislature, in enacting this act, to implement more fully, for the community colleges of California, the intent of the people in adopting the amendment of Section 14 of Article IX of the California Constitution. The Legislature further finds and declares that, in order to do so, it is necessary to amend or repeal many provisions of the Education Code. [¶] Wherever in this act a power or duty of a community college district governing board is repealed, or otherwise deleted by an amendment, it is not the intent of the Legislature to prohibit the board from acting as prescribed by the deleted provisions. Rather, *it is the intent of the Legislature, that the community college district governing board shall have the power, in the absence of other legislation, to so act under the general authority of Section 72233 of the Education Code.*' [Citation.] This 'general authority,' now embodied in section 70902, became known as the 'permissive code' concept.

". . . As the Legislature expressly stated, the permissive code allows a district's governing board to act under its general authority without specific statutory authorization.

"Since the permissive code was enacted in 1976, the Legislature has repealed many Education Code provisions which had specifically authorized community colleges to conduct various activities. . . . According to legislative counsel, specific statutory authority for such activities is no longer necessary in light of the permissive code. [Citation.] [¶] The only limitation placed on a governing board's authority under the permissive code is that the board may not act in any manner 'in conflict with, or inconsistent with, or preempted by, any law.' [Citation.]" (*Service Employees Internat. Union* v. *Board of Trustees, supra*, 47 Cal.App.4th at pp. 1665-1666.)

As part of the permissive code, the Legislature also (1) directed that the Board of Governors of the California Community Colleges adopt regulations incorporating the text of specified repealed or amended Education Code sections, and (2) provided that the specified sections would remain operative until the effective date of the corresponding regulation. (Stats. 1990, ch. 1372, § 708, p. 6320.) It specifically stated: "It is the intent of the Legislature that there be no lapse in the requirements, rights, responsibilities, conditions, or prescriptions contained in the statutes." (*Id.* at p. 6321.)

One of the specified Education Code sections was former Education Code section 72640 (repealed by Stats. 1990, ch. 1372, § 354, p. 6268), which is identical, in pertinent part, to title 5, section 55450. (Stats. 1990, ch. 1372, § 708, p. 6320, operative Apr. 5, 1991.) The immunity aspect of former Education Code section 72640 stated: "All persons making the field trip or excursion shall be deemed to have waived all claims against the district or the State of California for injury, accident, illness, or death occurring during or by reason of the field trip or excursion." (Stats. 1987, ch. 1118, §§ 9, 10, pp. 3800-3802.)

Thus, title 5, section 55450 is no mere administrative regulation. It is a regulation adopted by the Board of Governors of the California Community Colleges pursuant to the board's constitutional authority and the Legislature's mandate to the board to keep in effect the "requirements, rights, responsibilities, conditions, or prescriptions" of an identical repealed statute.

Under these peculiar circumstances, title 5, section 55450 and section 87706 must be deemed to have equal dignity.

2. *Voluntary Participation*

Defendants rely on *Wolfe* v. *Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126 [65 Cal.Rptr.2d 280], and, by extension, *Castro* v. *Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232 [126 Cal.Rptr. 537].

In *Wolfe*, a first grade student sued a school district for injuries suffered in an automobile accident when he was returning to school during school hours from a field trip in a car driven by a volunteer parent. The student's parent had signed a form consenting to the student's participation in the field trip. All students participated in the field trip, but if a student had not produced a consent form he or she would have remained at school and participated in alternate activities. The trial court granted summary judgment for the district.

In affirming the judgment, the court examined the immunities afforded school districts under Education Code sections 44808 and 35330, sections identical to section 87706 and title 5, section 55450, but applicable to elementary and secondary school districts.

*Wolfe*, however, does not hold that voluntary participation is an issue in these types of cases. It simply held that Education Code section 35330 immunity applied because the plaintiff was on a field trip. (*Wolfe* v. *Dublin Unified School Dist.*, *supra*, 56 Cal.App.4th at p. 134.) And it alternatively held that, if Education Code section 44808 arguably applied (because the field trip was a school-sponsored activity to which the school district undertook to provide transportation and supervision), the specific field-trip statute would control over the general school-sponsored-activity statute. (56 Cal.App.4th at p. 135.) The court discussed the voluntary participation issue only as part of its discourse on *Castro*. (*Id.* at pp. 131-132.)

In *Castro*, a high school student died while participating with an ROTC unit in a summer camp organized and supervised by the board of education. In the wrongful death action, the trial court sustained a demurrer on the basis of Education Code section 35330 immunity (then numbered as § 1081.5).

In reversing the judgment on the basis of Education Code section 44808 (then numbered as § 13557.5), the court noted that there existed a difference between "field trip or excursion" and "school-sponsored activity" and stated: "The Legislature, by these sections, recognized that: not all educational facilities can be provided within the confines of each school's property. To accomplish a school's educational aims, it therefore is necessary for students to accomplish portions of their study off the school's property. Students who are off of the school's property for *required* school purposes are entitled to the same safeguards as those who are on school property, within supervisorial limits. Students who participate in *nonrequired* trips or excursions, though possibly in furtherance of their education but not as *required* attendance, are effectively on their own; the *voluntary nature of the event absolves*

*the district of liability.* [¶] As we construe the governing sections, we conclude that where a 'school-sponsored activity,' i.e., one that *requires* attendance and for which attendance credit may be given, is involved, the event is a 'specific undertaking' of the district. In such a case 'the district . . . shall be liable or responsible for the . . . safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district.' " (*Castro* v. *Los Angeles Bd. of Education, supra,* 54 Cal.App.3d at p. 236, italics added, fn. omitted.)

The dispositive reason for the reversal in *Castro,* however, was not the voluntary nature of the participation. The court stated that the reason for the reversal was the need to provide the plaintiffs with "the forum in which to prove, if they can, that the ROTC 'summer camp, bivouac and summer training' was just as much a part of the school curriculum as a school-sponsored band or orchestra performance at an off-premises event." (*Castro* v. *Los Angeles Bd. of Education, supra,* 54 Cal.App.3d at p. 237.)

Hence, under *Castro,* the test is not really whether the student's participation was voluntary or not, but whether the off-premises activity was part of the school curriculum.

The Supreme Court has commented that *Castro*'s discussion about the voluntary nature of the event was "dicta" and, in doing so, correctly observed that *Castro*'s holding rested upon that "the activity was school-related." (*Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 518, fn. 3 [150 Cal.Rptr. 1, 585 P.2d 851].)

Thus, *Castro*'s statements about the voluntary or involuntary nature of the participation are (1) dicta, and (2) of questionable validity given that neither Education Code section 44808 nor Education Code section 35330 suggests such a test. ▮ For our purposes, neither section 87706 nor title 5, section 55450 suggests such a test. We therefore hold that the disputed facts about the voluntary or involuntary nature of plaintiffs' participation on the soccer team are immaterial. (Code Civ. Proc., § 437c, subds. (b), (c).)

### 3. *Statutory Construction*

At first blush, section 87706 and title 5, section 55450 appear inconsistent. And plaintiffs appear to tacitly assume that the sections are inconsistent by arguing that statutes prevail over regulations. But the sections can easily be harmonized.

As *Castro* observed, there is a difference between a field trip or excursion and a school-sponsored activity. More particularly, a field trip or excursion

is simply a narrowly defined type of the more broadly defined school-sponsored activity. (*Castro* v. *Los Angeles Bd. of Education*, *supra*, 54 Cal.App.3d at p. 236, fn. 2 ["We recognize the possibility of a 'field-trip or excursion' being permitted even during a 'school-sponsored activity.' "]; *Wolfe* v. *Dublin Unified School Dist.*, *supra*, 56 Cal.App.4th at p. 135 ["A field trip is a special type of off-premises activity, making section 35330 the special statute, should both statutes apply."].)

Plaintiffs' trip clearly falls within the broad category of a school-sponsored activity given that participation in an extracurricular sports program is part of the school curriculum. (See *Hartzell* v. *Connell* (1984) 35 Cal.3d 899, 910 [201 Cal.Rptr. 601, 679 P.2d 35] ["in cases determining the scope of school-related tort liability and insurance coverage, courts have held that 'school-sponsored activities, such as sports, drama, and the like,' though denominated ' "extracurricular," ' . . . nevertheless form an integral and vital part of the educational program' "]; *Acosta* v. *Los Angeles Unified School Dist.* (1995) 31 Cal.App.4th 471, 478 [37 Cal.Rptr.2d 171] ["most states, including California, have held a school district's duty of reasonable supervision applies to school-sponsored extracurricular sports programs"].)

The question in this case, however, boils down to whether plaintiffs were on a field trip or excursion. If so, then there is immunity.

*Castro* defined field trip or excursion as follows: " 'Field trip' is defined as a visit made by students and usually a teacher for purposes of first hand observation (as to a factory, farm, clinic, museum). 'Excursion' means a journey chiefly for recreation, a usual brief pleasure trip; departure from a direct or proper course, or deviation from a definite path." (*Castro* v. *Los Angeles Bd. of Education*, *supra*, 54 Cal.App.3d at p. 236, fn. 1.)

Strictly speaking, plaintiffs' trip to Fresno does not appear to be a field trip given that it was a trip to participate rather than observe; and, though the trip had recreational and pleasurable aspects, the essence of the trip was not excursionary given that the trip was part of a regular activity rather than a departure or deviation from the norm.

But title 5, section 55450 itself further describes field trips or excursions. The section supposes that field trips or excursions are conducted "in connection with . . . school-related . . . athletic . . . activities." (tit. 5, § 55450, subd. (a).) School-related athletic activities necessarily include extracurricular sports programs. Thus, by its own terms, title 5, section 55450 places trips in connection with extracurricular sports programs into the narrowly defined field trip or excursion type of school-sponsored activity.

Plaintiffs were therefore on a field trip or excursion; hence, the special or specific immunity statute applies. (*Wolfe* v. *Dublin Unified School Dist.*, *supra*, 56 Cal.App.4th at p. 135.)

## DISPOSITION

The judgment is affirmed.

Cottle, P. J., and Elia, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 23, 2000. Mosk, J., and Werdgar, J., were of the opinion that the petition should be granted.